**COURT OF CHANCERY
OF THE
STATE OF DELAWARE**

LORI W. WILL
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

Date Submitted: February 5, 2024
Date Decided: April 1, 2024

Stephen C. Norman, Esquire
Matthew F. Davis, Esquire
Tyler J. Leavengood, Esquire
Potter Anderson & Corroon LLP
1313 North Market Street
Wilmington, Delaware 19801

Kurt M. Heyman, Esquire
Aaron M. Nelson, Esquire
Heyman Enerio Gattuso & Hirzel LLP
300 Delaware Avenue, Suite 200
Wilmington, Delaware 19801

Gregory P. Williams, Esquire
Rudolf Koch, Esquire
Robert L. Burns, Esquire
Matthew D. Perri, Esquire
Edmond S. Kim, Esquire
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, Delaware 19801

RE: *ITG Brands, LLC v. Reynolds American Inc., et al.*,
C.A. No. 2017-0129-LWW

Dear Counsel:

This letter resolves Philip Morris USA Inc.'s motion to intervene. Philip Morris seeks to assert an unjust enrichment claim against the parties. But intervention could have been sought long ago and comes on the cusp of trial. The motion is denied as untimely.

## I.    BACKGROUND

The background of this action is described in memorandum opinions by this court dated September 30, 2022 (the "2022 Opinion") and October 2, 2023 ("2023

Opinion").[1]  Capitalized terms used below have the same meanings given in the 2023 Opinion.

In the 2022 Opinion, I held that the Florida Judgment Liability was an Assumed Liability that ITG was responsible for under the APA.[2]  In the 2023 Opinion, I held that Reynolds was entitled to indemnification for the Losses associated with the Florida Judgment Liability based on ITG's sales of Acquired Brand cigarettes.[3]  The amount of Reynolds' damages will be determined after trial this July.  The issues for trial include the potential application of a Profit Adjustment allocation, which ITG avers may reduce the amount of indemnification available to Reynolds.[4]

The Profit Adjustment relates to annual payments to Florida, based on the volume of ITG's sales of the Acquired Brands, in connection with a settlement agreement among Florida, Reynolds, and Philip Morris.  The Profit Adjustment formula has been in place since the Florida Judgment in 1998, and a separate agreement between the Settling Defendants dictates allocation of the Profit

---

[1] *ITG Brands, LLC v. Reynolds Am., Inc.*, 2022 WL 4678868 (Del. Ch. Sept. 30, 2022) ("2022 Op."); *ITG Brands, LLC v. Reynolds Am., Inc.*, 2023 WL 6383240 (Del. Ch. Oct. 2, 2023) ("2023 Op.").

[2] 2022 Op. at *20.

[3] 2023 Op. at *23.

[4] *Id*.

Adjustment among them.[5]  In general, the Profit Adjustment "applies if the Settling Defendants' aggregate net operating profits from domestic sales of cigarettes in the current year exceed aggregate inflation-adjusted 'base year' profits from a 1997 base year."[6]  It is intended to "ensure[] that if the Settling Defendants' post-settlement shipment volumes decrease but their profits increase, settlement payments increase as well."[7]

In Philip Morris's view, assessment of the Profit Adjustment at trial implicates its own interests.  On October 31, 2023, Philip Morris moved to intervene in this action so that it could advance an unjust enrichment claim against ITG and Reynolds.[8]  It argues that since the "aggregate portion of the Profit Adjustment payment allocated to Reynolds was reduced (because ITG did not join the Florida Settlement), the portion allocated to Philip Morris was increased by the exact same amount."[9]

---

[5] ITG Brands, LLC's Combined Opening Br. in Supp. of Mot. for Summ. J. on Remedies and Answering Br. in Opp'n to Reynolds' Mot. for Summ. J. (Dkt. 343) Ex. 5 at App. A; *Id.* Ex. 8.

[6] 2023 Op. at *3.

[7] *Id.*

[8] *Id.*; *see* Philip Morris USA, Inc.'s [Proposed] Compl. in Intervention (Dkt. 396).

[9] Philip Morris USA, Inc.'s Mot. to Intervene (Dkt. 396) ("Mot.") ¶ 13.

After Reynolds and ITG opposed the motion,[10] Philip Morris filed a reply,[11] and oral argument was held on February 5, 2024.[12]

## II.   ANALYSIS

Court of Chancery Rule 24 allows intervention by right or by permissive intervention.[13]   Rule 24(a)(2) requires the court to permit intervention when the movant "claims an interest relating to the property or transaction" at issue and "is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."[14]   Rule 24(b)(1)(b) permits intervention as a matter of the court's discretion when the movant "has a claim or defense that shares with the main action a common question of law or fact."[15]   Philip Morris argues that either provision provides a means for it to intervene.

---

[10] Reynold's Opp'n to Philip Morris USA Inc.'s Mot. to Intervene (Dkt. 401); ITG Brands, LLC's Opp'n to Philip Morris USA Inc.'s Mot. to Intervene (Dkt. 403).

[11] Dkt. 409.

[12] Dkt. 410; *see* Tr. Of Oral Arg. on Philip Morris USA Inc.'s Mot. to Intervene (Dkt. 411) ("Hr'g Tr.").

[13] Ct. Ch. R. 24.

[14] Ct. Ch. R. 24(a)(2).

[15] Ct. Ch. R. 24(b)(1)(b).

Intervention of right and permissive intervention require a "timely motion."[16] "Timeliness is a flexible concept, requiring consideration of all the circumstances of a particular case."[17] A timeliness determination is fact specific and discretionary.[18] The court's analysis is driven by two factors: "the inexcusableness of the delay and the prejudice to existing parties."[19] Neither supports granting Philip Morris's motion.

First, Philip Morris's delay is inexcusable. "[C]ourts have generally been reluctant to allow intervention when the applicant appears to have been aware of the litigation but has delayed unduly in seeking to intervene."[20] Philip Morris could have sought intervention long before now and offers no reason for its failure to do so.[21]

---

[16] Ct. Ch. R. 24(a), (b).

[17] *Dugan v. Dineen*, 1990 WL 82719, at *5 (Del. Ch. June 12, 1990).

[18] *GMF ELCM Fund L.P. v. ELCM HCRE GP LLC*, 2021 WL 4313430, at *10 (Del. Ch. Sept. 22, 2021) (quoting *Great Am. Leasing Corp. v. Republic Bank*, 2003 WL 22389464, at *1 (Del. Ch. Oct. 3, 2003)).

[19] *Id.*

[20] *Great Am. Leasing*, 2003 WL 22389464, at *1 (quoting 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1916 (2d ed. 1986)).

[21] *See In re Reinz Wisconsin Gasket, LLC*, 2023 WL 4986411, at *4 (Del. Ch. Aug. 3, 2023) (denying intervention where the movant "was aware of its interest in [the] litigation and the steps needed to directly protect those interests" but offered "no justification for its delay").

Philip Morris's delay is measured in years. It entered its appearance in this action in February 2017, in connection with the first motion hearing before Chancellor Bouchard.[22] The thrust of its present motion is that it has been wrongly losing funds under the Profit Adjustment allocation since the Florida Judgment was entered in 2018.[23] Nothing prevented Philip Morris from arguing—in Florida or Delaware—that ITG inequitably retained funds belonging to Philip Morris due to the Profit Adjustment. At the most generous, Philip Morris could have intervened after ITG was found liable to Reynolds in my 2022 Opinion.[24] Yet Philip Morris waited until the following October to seek intervention.

Second, Philip Morris's delay is compounded by the prejudice intervention would inflict on the parties.[25] Prejudice may arise when intervention would "delay the termination of the litigation."[26] The parties have been litigating this action for nearly seven years. Liability and threshold remedy issues were resolved on

---

[22] Dkt. 15.

[23] Mot. ¶¶ 5, 17, 19, 38, 46.

[24] Dkt. 328; *see* Hr'g Tr. at 37 (Philip Morris's counsel acknowledging that it could have attempted to bring its claim in "October of 2022").

[25] *Great Am. Leasing*, 2003 WL 22389464, at *1 ("The most important consideration in deciding whether a motion for intervention is untimely is whether the delay in moving for intervention will prejudice the existing parties to the case." (quoting Wright et al., *supra* note 20)).

[26] 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1916 (3d ed. 1998), Westlaw (database updated Sept. 2023).

summary judgment, and a two-day trial on damages begins in several months. Adding Philip Morris's unjust enrichment claim would inject new issues into and risk postponing the conclusion of this long-pending matter.[27]

## III.   CONCLUSION

Philip Morris's inexcusable delay and the potential disruption to this action are grounds to reject intervention.  The motion to intervene is denied.  IT IS SO ORDERED.

Sincerely yours,

*/s/ Lori W. Will*

Lori W. Will
Vice Chancellor

---

[27] *See State v. MERSCORP, Inc.*, 2012 WL 1949867, at *1 (Del. Ch. May 23, 2012) (denying intervention where proposed claims "could give rise to complicated issues of fact and law that would not otherwise be implicated"); *CAPM Corp. Advisors AB v. Protegrity, Inc.*, 2001 WL 1360122, at *12 (Del. Ch. Oct. 30, 2001) (denying intervention where it would require "further discovery" in a "dispute of narrow focus"); *Great Am. Leasing*, 2003 WL 22389464, at *1 ("Courts routinely deny intervention when 'trial has begun or is about to begin.'" (quoting Wright et al., *supra* note 20)).